## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| WICKENS HERZER PANZA CO., | : | |
| AN OHIO CORPORATION, | : | |
| 35765 CHESTER ROAD | : | |
| AVON, OHIO  44011, | : | |
| | : | |
| Plaintiff, | : | |
| | : | CIVIL NO. |
| v. | : | |
| | : | JUDGE |
| PNC BANK NATIONAL ASSOCIATION | : | |
| THE TOWER AT PNC PLAZA | : | MAGISTRATE |
| 300 FIFTH AVENUE | : | |
| PITTSBURGH, PENNSYLVANIA 15222, | : | |
| | : | |
| ALSO SERVE: | : | |
| PNC BANK NATIONAL ASSOCIATION | | |
| C/O CORPORATION SERVICE COMPANY, | | |
| STATUTORY AGENT | : | |
| 1160 DUBLIN ROAD, SUITE 400 | : | |
| COLUMBUS, OHIO 43215, | : | |
| | | |
| BEAZLEY USA SERVICES, INC., | : | |
| C/O THE CORPORATION TRUST COMPANY, | | |
| STATUTORY AGENT | : | |
| CORPORATION TRUST CENTER | : | |
| 1209 ORANGE STREET | : | |
| WILMINGTON, DELAWARE  19801, | : | |
| | : | |
| ALSO SERVE: | : | |
| MENDES & MOUNT | : | |
| 750 SEVENTH AVENUE | : | |
| NEW YORK, NEW YORK 10019, | : | |
| | : | |
| Defendants. | : | |

## <u>COMPLAINT</u>

Now comes **PLAINTIFF WICKENS HERZER PANZA CO.** ("WHP"), by and through

its undersigned counsel, and for its Complaint against **DEFENDANTS PNC BANK NATIONAL**

ASSOCIATION (**"PNC"**) and **DEFENDANT BEAZLEY USA SERVICES, INC. ("Beazley"),** states as follows:

## INTRODUCTION

1.      This action relates to losses sustained and suffered by WHP as a result of a fraudulent scheme perpetrated on it by an imposter of Odfjell Drilling Ltd. ("Odfjell") that culminated in the wire of money from WHP's Interest On Lawyer's Trust Account (the "Account") maintained at PNC.  Odfjell conducted its communications with WHP primarily via computer, using email and Zoom, to initiate contact with WHP, engage WHP to provide legal services, interact with WHP in connection with legal services it provided to Odfjell, and transmit instructions concerning wire of funds from WHP's Account as further described herein.

2.      PNC's negligent actions including its processing and handling of what was, unbeknownst to WHP, a fraudulent or fictitious cashier's check that WHP deposited into its Account, misrepresentation of the status of the check, accepting return of the check after the payor bank's midnight deadline expired, and failing to timely act to stop a wire transfer after being informed the check was dishonored and being returned unpaid, all resulted in loss to WHP.  But for PNC's actions, omissions, and misrepresentations, WHP would not have requested PNC wire proceeds from the fraudulent or fictitious cashier's check that was credited to its Account, in furtherance of the scheme.  PNC failed to exercise ordinary care in processing and handling the cashier's check, breached its account agreement with WHP, and was negligent in its supervision of its employees and allowing the fraudulent scheme to be perpetrated on WHP, as stated herein.

3.      For its part, Beazley issued an insurance policy pursuant to which WHP is the named beneficiary, that provided coverage for the losses sustained and suffered by WHP. Notwithstanding the language of the policy at issue, Beazley's obligations to provide coverage for

2

and payment of the losses, and WHP's timely payment of all amounts due by it pursuant to the insurance policy, Beazley wrongfully rejected WHP's claim that was timely presented and refused to make payment as agreed pursuant to one or more of the policies.

## PARTIES, JURISDICTION, AND VENUE

4.     WHP is an Ohio corporation, formed and existing under the laws of the State of Ohio, authorized to do business in the State, with its principal place of business as stated in the caption of this Complaint.  WHP is a full-service law firm.

5.     PNC is a national banking association organized under the laws of the State of Delaware with its main office and principal place of business at The Tower at PNC Plaza, 300 Fifth Avenue, Pittsburgh, Pennsylvania 15222.   For purposes of federal diversity jurisdiction, PNC is a citizen of the State of Delaware.

6.     Beazley is a corporation, organized under the laws of the State of Delaware with its principal place of business at 65 Memorial Road, Suite 320, West Hartford, Connecticut 06107-4218.  For purposes of federal diversity jurisdiction, Beazley is a citizen of the State of Delaware.

7.     Upon information and belief, Odfjell is a company headquartered in Scotland, United Kingdom, and is engaged in the business of manufacturing and/or selling oil drilling and rigging equipment, on a worldwide basis.

8.     The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 in that the matter in controversy exceeds the sum or value of $75,000.00 exclusive of interest and costs and this action is between citizens of different states.

9.     Venue is proper in this District under 28 U.S.C. § 1391(b)(2), (b)(3), and (c)(2).

## FACTS COMMON TO ALL CAUSES OF ACTION

10.     At all times relevant to the causes of action stated herein, Beazley issued, and WHP

3

maintained, a Business Owner's Policy (the "Beazley Insurance Policy"), designating WHP beneficiary and insuring it against losses described in said Policy.  Attached hereto and incorporated herein as Exhibit A is a true and accurate copy of the Beazley Insurance Policy.

11.    At all times relevant to the causes of action stated herein, WHP maintained its Account at PNC, to which a deposit account agreement applies.  Attached hereto and incorporated herein as Exhibit B is a true and accurate copy of what WHP believes is the most recent account agreement.

12.    In accordance with Ohio's applicable Rules of Professional Conduct, WHP keeps and safeguards client funds in its Account, prior to distribution in connection with a variety of client matters.

13.    On or about November 12, 2024, WHP received an email purportedly from Odfjell, through its Chief Executive Officer, Kjetil Gjersdal ("Gjersdal"), inquiring whether WHP would consider representing Odfjell in connection with its anticipated sale of oil drilling equipment to Marathon Petroleum Corporation ("Marathon"), headquartered in Findlay, Ohio.

14.    Odfjell initiated and conducted the majority of its communications with WHP regarding engagement of services via computer, including the extensive exchange of emails and computer-based calls including via Zoom.  Odfjell relied primarily upon the use of computers and email to carry out its fraudulent scheme on WHP, including transmitting all instructions concerning wire of the proceeds from a cashier's check.

15.    On November 18, 2024, after exchanging additional emails with Odfjell, running and clearing a conflicts check, and conducting further due diligence regarding Odfjell, WHP participated in a Zoom conference call with Odfjell's CEO, Gjersdal, and another employee, Katie Chapman, to discuss WHP's potential representation of Odfjell in connection with the Marathon

4

transaction.

16. WHP responded to Odfjell by email that it would represent Odfjell in connection with the Marathon transaction, provided it enter into a written engagement agreement and deliver a retainer to WHP. On November 20, 2024, WHP and Odfjell exchanged executed versions of the engagement agreement, pursuant to which WHP agreed to represent Odfjell and provide legal services in connection with its anticipated sale of oil drilling equipment to Marathon, in exchange for compensation for said legal services from Odfjell.

17. On or about November 20, 2024, WHP was advised Marathon would be delivering a check to WHP, a portion of which was allocated to cover the costs of inspecting the equipment in Hong Kong, where it was manufactured, and for payment of WHP's required retainer, with the remaining proceeds awaiting further instruction by Odfjell prior to disbursement by WHP.

18. Between November 20, 2024 and December 5, 2024, WHP and Odfjell exchanged emails concerning the status and progress of Odfjell's negotiations with Marathon. During this time frame and thereafter, WHP provided legal services to Odfjell in connection with its anticipated sale of oil drilling equipment to Marathon that included, among other things, preparation of a letter of intent and subsequent purchase and sale agreement.

19. On Thursday, December 5, 2024, Odfjell delivered a fully executed copy of the letter of intent to WHP, that appeared to have been executed by authorized representatives of Marathon.

20. On Thursday, December 12, 2024, WHP received a cashier's check dated December 3, 2024 in the amount of Five Hundred Thirty-Two Thousand Five Hundred and No/100 Dollars ($532,500.00) (the "Check") drawn on Marathon's account at Woodforest National Bank ("Woodforest") and made payable to WHP. A true and accurate copy of the Check is attached

hereto as Exhibit C.

21.    On Thursday, December 12, 2024, WHP deposited the Check into its Account at PNC at which time PNC accepted deposit of the Check.

22.    The Check was deposited by WHP and accepted by PNC for deposit prior to PNC's cutoff time on Thursday, December 12, 2024, such that the Check was considered deposited that day.

23.    Upon deposit of the Check, PNC credited WHP's Account for the amount of the Check, *e.g.,* Five Hundred Thirty-Two Thousand Five Hundred and No/100 Dollars ($532,500.00).

24.    Upon information and belief, PNC presented the Check to Woodforest for payment either on Thursday, December 12, 2024, such that Woodforest's midnight deadline to return the Check unpaid, dishonor it, or advise PNC of the same, was Midnight EST, Friday, December 13, 2024, or on Friday December 13, 2025, such that Woodforest's midnight deadline was Midnight EST, Monday, December 16, 2024.

25.    On Friday, December 13, 2024, Odfjell advised WHP the transaction with Marathon was moving forward and requested WHP wire Three Hundred Twenty-Eight Thousand Five Hundred and No/100 Dollars ($328,500.00) from its Account to Guini Limited, a Hong Kong based company that was scheduled to perform a required inspection of the equipment.  In response, WHP advised Odfjell (a) the Check provided to WHP for deposit had not yet cleared, (b) that needed to occur before any funds from the Account would be wired, and (c) WHP did not expect to be able to wire the funds until Monday, December 16, 2024, at the earliest.

26.    On Friday, December 13, 2024, Heather Wagner ("Wagner"), WHP's General Ledger Administrator, checked the balance in WHP's Account online and confirmed the proceeds

from the Check in the amount of Five Hundred Thirty-Two Thousand Five Hundred and No/100 Dollars ($532,500.00) had been credited to the Account and were available to WHP. WHP had not yet received assurance from PNC the Check had cleared.

27. On Monday, December 16, 2024, WHP received a request to wire Three Hundred Twenty-Eight Thousand Five Hundred and No/100 Dollars ($328,500.00) of the proceeds from the Check that had been deposited into its Account, to Guini Limited, so inspection of the equipment being purchased by Marathon could proceed. Before WHP proceeded to access and request that proceeds from the Check be wired, WHP's Wagner accessed its Account online at approximately 9:14AM EST, Monday, December 16, 2024, to attempt to determine whether the Check had cleared and good funds were available for withdraw. She then contacted PNC's Treasury Management Department via telephone to inquire whether the Check had cleared and was good. PNC made a recording of the call with Wagner, and PNC's in-house attorney, Michael Klemmer, later confirmed to WHP, prior to its filing of the instant Complaint, that PNC represented to WHP the Check had cleared, meaning the proceeds from the Check were collected, the Check was good, and WHP could wire the requested proceeds to Guini Limited without chargeback or dishonor of the Check.

28. Upon information and belief, PNC was negligent and failed to properly train and supervise its employees, including but not limited to one or more of its Treasury Management Department employees, to determine whether checks deposited have cleared, with its in-house attorney, Michael Klemmer, implying in a telephone call with WHP after the fraud was discovered that the employee who spoke to Wagner and advised her the Check had cleared was green and inexperienced.

29. Relying on PNC's expertise and its representations early in the morning on

December 16, 2024, to WHP's Wagner, including that the Check had cleared, WHP obtained wiring instructions, an invoice, and bank code in preparation for wiring Three Hundred Twenty-Eight Thousand Five Hundred and No/100 Dollars ($328,500.00) from its Account to Guini Limited, via its bank, Dah Sing Bank, Limited, located in Hong Kong, as requested by Odfjell.

30.     At 1:22PM EST, December 16, 2024 and in reliance on PNC's representation earlier that day the Check had cleared, WHP requested PNC wire Three Hundred Twenty-Eight Thousand Five Hundred and No/100 Dollars ($328,500.00) in proceeds from the Check to Guini Limited's bank, located in Hong Kong.

31.     At 3:13PM EST, Monday, December 16, 2024, PNC telephoned WHP's Wagner to inform her the wire had not been initiated or processed and requested she provide verbal approval to complete the wire.  Reasonably relying on PNC's representation earlier in the day that the Check had cleared, WHP's Wagner provided the requested approval to PNC.

32.     At 3:22AM EST, December 17, 2024, five (5) days after WHP deposited the Check into its Account, PNC sent an email to WHP stating the Check was being returned unpaid by Woodforest and "may have been altered and/or may be fraudulent."  PNC then debited the full amount of the Check from WHP's Account.

33.     Upon receipt of PNC's 3:22AM EST email on December 17, 2024, WHP immediately contacted PNC to request (a) an instant hold be placed on its Account so no funds would be debited from its Account including for purposes of processing the wire and (b) the wire, if initiated and/or processed, be immediately canceled, reversed, or recalled.  PNC failed to take immediate action resulting in processing of the wire against WHP's Account.  Upon information and belief, reversal or recall of the wire was initiated by PNC at approximately Noon EST on December 17, 2024, notwithstanding WHP's earlier instructions to cancel, reverse, or recall the

8

wire. PNC's later, untimely action to cancel, reverse, or recall the wire, was not successful, according to PNC.

34. Upon information and belief, PNC did not attempt to halt disbursement of proceeds from WHP's Account or to cancel, recall, or reverse the wire transfer, upon learning of Woodforest's dishonor of the Check and/or that it was fraudulent or fictitious, except as set forth in Paragraph 37 above.

35. WHP made timely demand on PNC for reimbursement of the proceeds from the Check, however, PNC refused.

36. WHP attempted to recover the funds from Odfjell, however those attempts were unsuccessful.

37. The Policy was in effect at the time of WHP's loss.

38. The Policy, at "CYBER THEFT AND SOCIAL ENGINEERING COVERAGE PART II," Section II.G, provides as follows:

> We will reimburse the insured organization for financial loss in excess of the Deductible and within the Limits of Insurance, which is incurred as a result of cyber theft first discovered by a member of the control group during the policy period and reported to us pursuant to Section VI.D of this Policy.

*See* Ex. A, Sec. II.G, p. 2 of 41.

39. The Policy, at "CYBER THEFT AND SOCIAL ENGINEERING COVERAGE PART II," Section IV, Q, contains the following relevant definition:

> Cyber theft means financial loss incurred as a result of:
>
> A. The electronic transfer of money or securities from bank, escrow, or securities accounts, which are:
>
> 1. property of the insured organization; or
>
> 2. under the trust and control of the insured organization,

9

by an officer, director, principle, partner, member, principal, stockholder, owner, or employee of the insured organization, in good faith, to an unintended third party in reasonable reliance on fraudulent or deceptive communications from a third party impersonating:

\*\*\*

iii.      a customer or vendor of the insured organization,

which direct the insured organization to electronically transfer money or securities to a third party under false pretenses. However, if the details of the electronic transfer instructions are new or changed from previous instructions the insured organization has on record, the insured organization must first verify such new or changed instructions with the intended recipient using previously verified or publicly available contact information and a communication method other than the method of communication(s) used to request such electronic transfer, prior to transferring the money or securities.

*See* Ex. A, Sec. IV.Q.1, pp. 7-8 of 41.

40.      WHP was not required to comply with the verification process set forth in the last sentence of Sec. IV.Q.1, recited in Paragraph 43 above, however, to the extent it was, it did so prior to initiating the wire, by taking additional steps including but not limited to notification, callback verification, and email approval.

41.      WHP's loss resulted from the electronic transfer of money from its Account that was WHP's property and under WHP's trust and control by a WHP employee, acting  in  good faith,  to  an  unintended  third  party  in  reasonable  reliance  on  fraudulent  or  deceptive communications from a third-party impersonating WHP's client that directed it to electronically transfer money to a third party under false pretenses.

42.      Subsequent to the loss, WHP timely presented its claim under the Policy and provided all required documentation, however, on April 7, 2025, Beazley wrongfully refused to compensate WHP for its losses, notwithstanding that the Policy covers the losses.  Attached hereto and incorporated herein as Exhibit D is a true and accurate copy of Beazley's denial of coverage and rejection of WHP's claim.

43.     As of the filing of this Complaint, WHP has not received any remuneration from PNC or Beazley, and as a result of their actions and inactions, WHP has suffered a loss in the amount of at least Three Hundred Twenty-Eight Thousand Five Hundred and No/100 Dollars ($328,500.00).

44.     WHP seeks actual, general, and punitive damages, restitution, declaratory relief, penalties, and interest, as well as its attorney fees and costs, as a result of the wrongful conduct of PNC and Beazley.

### FIRST CAUSE OF ACTION AGAINST PNC
### VIOLATION OF R.C. 1304.24

45.     WHP incorporates the allegations set forth in the preceding paragraphs as if the same were fully written herein.

46.     In relation to the Check, PNC is both a depository bank pursuant to R.C. 1304.01(B)(2) and collecting bank pursuant to R.C. 1304.01(B)(5).

47.     Upon information and belief, Woodforest did not timely return the Check unpaid, dishonor it, or advise PNC of the same, by its midnight deadline.

48.     Pursuant to R.C. 1304.24, PNC's right to revoke provisional settlement of the Check, chargeback WHP's Account, or obtain a refund terminated when settlement for the Check became final not later than Midnight EST, Monday, December 16, 2024, but perhaps prior to that time.

49.     Because final settlement and/or payment of the Check occurred not later than Midnight EST, Monday, December 16, 2024, PNC wrongfully invaded WHP's Account on December 17, 2024 and debited Five Hundred Thirty-Two Thousand Five Hundred and No/100 Dollars ($532,500.00) from the Account.

50.     WHP has demanded, but PNC has refused to pay WHP the sum of Three Hundred

11

Twenty-Eight Thousand Five Hundred and No/100 Dollars ($328,500.00), that PNC improperly debited from WHP's Account and wired to Guini Limited's bank in Hong Kong.

51.     WHP is entitled to recover from PNC the funds it improperly debited from WHP's Account in the amount of Three Hundred Twenty-Eight Thousand Five Hundred and No/100 Dollars ($328,500.00).

52.     As a result of PNC's actions, WHP has been damaged in an amount to be determined at trial, but not less than Three Hundred Twenty-Eight Thousand Five Hundred and No/100 Dollars ($328,500.00).

## SECOND CAUSE OF ACTION AGAINST PNC
## NEGLIGENT MISREPRESENTATION

53.     WHP incorporates the allegations set forth in the preceding paragraphs as if the same were fully written herein.

54.     In response to WHP's December 16, 2024 inquiry as to the status of the Check, PNC affirmatively represented to WHP's Wagner the Check had cleared, meaning it was good, could not be returned or dishonored, and was not subject to chargeback against WHP's Account.

55.     In the course of its business, PNC supplied false and misleading information to WHP intending to guide WHP in the course of its business transactions, and otherwise dealing with its Account. Specifically, PNC falsely represented to WHP the Check had cleared, when it had not.

56.     PNC's representation to WHP was false and misleading because at the time PNC represented to WHP the Check had cleared, PNC knew or should have known that the Check was fictitious and/or fraudulent and that the Check had not cleared and been finally paid.

57.     PNC made the false and misleading representation to WHP knowing WHP would use and rely on the representation for the particular purposes of accessing and using the proceeds

12

from the Check deposited in the Account to wire the same to a third party.

58.     PNC's December 16, 2024 representation the Check had cleared was negligent because the Check had not cleared and been finally paid.

59.     WHP justifiably relied on PNC's December 16, 2024 false representation when it subsequently requested PNC wire funds from WHP's Account to Guini Limited's bank in Hong Kong.

60.     PNC owed WHP a duty not to negligently supply false and misleading information about the Check to WHP.

61.     PNC failed to exercise reasonable care or competence in obtaining and communicating the information about the Check to WHP.   More specifically, PNC failed to take reasonable steps, consistent with the standard of care for financial institutions, to confirm the accuracy of its representations regarding the Check.

62.     PNC provided the information that the Check had cleared to WHP, for WHP's benefit and knew WHP would be influenced by PNC's representation and rely on it in handling its Account and accessing the proceeds from the Check on deposit in the Account.

63.     WHP relied to its detriment on PNC's representation the Check had cleared, when it instructed PNC to wire Three Hundred Twenty-Eight Thousand Five Hundred and No/100 Dollars ($328,500.00) from its Account to Guini Limited's bank in Hong Kong.

64.     As a direct and proximate result of PNC's negligent misrepresentations, WHP was damaged in an amount not less than Three Hundred Twenty-Eight Thousand Five Hundred and No/100 Dollars ($328,500.00) when PNC wrongfully debited the funds from WHP's Account.

**THIRD CAUSE OF ACTION AGAINST PNC**
**NEGLIGENCE - R.C. 1304.24**

65.     WHP incorporates the allegations set forth in the preceding paragraphs as if the

same were fully written herein.

66. Pursuant to R.C. 1304.24, PNC owed WHP a duty to act with ordinary care in its transactions with WHP relating to the Account including but not limited to the processing and handling of the Check deposited to its Account.

67. PNC failed to exercise ordinary care and/or breached its duty of ordinary care owed to WHP when it accepted Woodforest's untimely return of the Check unpaid, dishonor of it, or notice to PNC of the same after final settlement of the Check had occurred and improperly invaded and debited WHP's Account in the amount of Five Hundred Thirty-Two Thousand Five Hundred and No/100 Dollars ($532,500.00).

68. PNC was grossly negligent and/or negligent when it WHP when it accepted Woodforest's untimely return of the Check unpaid, dishonor of it, or notice to PNC of the same after final settlement of the Check had occurred and improperly invaded and debited WHP's Account in the amount of Five Hundred Thirty-Two Thousand Five Hundred and No/100 Dollars ($532,500.00).

69. As a result of PNC's gross negligence and/or negligence, WHP was damaged in an amount not less than Three Hundred Twenty-Eight Thousand Five Hundred and No/100 Dollars ($328,500.00) when PNC wrongfully debited the funds from WHP's account.

### FOURTH CAUSE OF ACTION AGAINST PNC
### BREACH OF CONTRACT

70. WHP incorporates the allegations set forth in the preceding paragraphs as if the same were fully written herein.

71. Pursuant to the deposit account agreement, PNC agreed to exercised ordinary care in performing services to WHP in connection with the Account, including to obtain and communicate accurate information to WHP and specifically in response to its direct inquiry

14

whether the Check deposited into the Account had cleared.

72.     Upon information and belief, PNC knew or should have known when it represented to WHP that the Check had cleared that it had not, and then initiated and completed the wire transfer request made by WHP.

73.     PNC breached its agreement with WHP when it communicated false information to WHP that the Check had cleared, accepted Woodforest's untimely return of the Check, dishonor of it, or notice of the same, and failed to subsequently inform WHP the Check had not cleared, contrary to its earlier misrepresentation.

74.     As a direct and proximate result of PNC's breach of its agreement, WHP was damaged in an amount not less than Three Hundred Twenty-Eight Thousand Five Hundred and No/100 Dollars ($328,500.00).

**FIFTH CAUSE OF ACTION AGAINST PNC**
**EQUITABLE ESTOPPEL**

75.     WHP incorporates the allegations set forth in the preceding paragraphs as if the same were fully written herein.

76.     PNC's representation to WHP that the Check cleared was a representation of a material fact.

77.     PNC knew or should have known at the time it made the representation to WHP that the Check had cleared and initiated the wire on December 16, 2024, that the Check had not cleared.

78.     PNC intended WHP would act upon its representation that the Check had cleared in accessing the proceeds from the Check in its Account and requesting the wire transfer.

79.     WHP, and specifically Wagner, were unaware the Check had not cleared when PNC represented it had.

80.     WHP detrimentally and justifiably relied on PNC's representations on December 16, 2024 that the Check had cleared, meaning the proceeds had been collected and were no longer subject to chargeback, before WHP proceeded to access the proceeds from the Check deposited in its Account and request wire transfer of the funds to Guini Limited's bank, Dah Sing Bank, Limited located in Hong Kong,

81.     As a result of PNC's representations, it is equitably estopped from denying final settlement and/or payment of the Check or that the Check had not cleared, and from debiting funds from WHP's Account.

82.     As a result of PNC's wrongful actions, WHP has been damaged in an amount not less than Three Hundred Twenty-Eight Thousand Five Hundred and No/100 Dollars ($328,500.00) when PNC wrongfully debited the funds from WHP's Account.

### SIXTH CAUSE OF ACTION AGAINST BEAZLEY
### DECLARATORY JUDGMENT

83.     WHP incorporates the allegations set forth in the preceding paragraphs as if the same were fully written herein.

84.     The Policy provides coverage for the losses WHP sustained and/or suffered as a result of the fraudulent scheme described herein.

85.     Pursuant to the Policy, Beazley agreed to compensate WHP for the losses.

86.     Beazley denies the Policy provides coverage for the losses sustained and suffered by WHP and that it has an obligation under the Policy to compensate WHP for its losses.  *See* Ex. D.

87.     A dispute has arisen with Beazley concerning interpretation of the Policy and its obligations to compensate WHP for its losses.

88.     Beazley's denial of coverage and refusal to compensate WHP creates an actual

controversy between WHP and Beazley concerning interpretation of the Policy and coverage for WHP's losses.

89. WHP seeks a declaration that the Policy provides coverage for the losses it has sustained and suffered, and further that Beazley has a legal obligation to compensate WHP for the losses.

## SEVENTH CAUSE OF ACTION AGAINST BEAZLEY
## BREACH OF CONTRACT

90. WHP incorporates the allegations set forth in the preceding paragraphs as if the same were fully written herein.

91. The Policy constitutes a valid, legally binding contract between Beazley and WHP, as beneficiary of the Policy, for Beazley's payment of the losses sustained and suffered by WHP as a result of the wire of funds from WHP's Account.

92. The losses sustained and suffered by WHP are the types of losses covered by the Policy, and WHP is therefore entitled to recover under the Policy.

93. By failing to make payment under the Policy, despite accepting premium payments from WHP, Beazley has breached the terms and conditions of the Policy, causing WHP significant financial harm.

94. In refusing, without justification or cause, to pay WHP the funds owed to it under the Policy, Beazley has unilaterally breached the Policy by refusing to perform and make payment thereunder as agreed.

95. Beazley's action and inaction has proximately caused and continues to cause WHP to suffer damages in an amount of at least Three Hundred Twenty-Eight Thousand Five Hundred and No/100 Dollars ($328,500.00), but in an amount to be determined at trial.

17

**EIGHTH CAUSE OF ACTION AGAINST BEAZLEY**
**INSURANCE BAD FAITH**

96.     WHP incorporates the allegations set forth in the preceding paragraphs as if the same were fully written herein.

97.     Ohio law implies a covenant of good faith and fair dealing in every contract, including insurance policies.  This covenant requires an insurer to make a thorough and prompt investigation of the insured's claim for benefits and to not unreasonably delay or withhold payment of benefits.

98.     Beazley failed to make a thorough and prompt investigation of WHP's claims and denied WHP payment of benefits based on reasons that are without legal or factual merit or basis. Had Beazley made a thorough investigation, it would have discovered WHP is entitled to payment under the Policy for the losses caused by the wire of funds from the Account.

99.     Without any legal or factual basis, Beazley claimed provisions of the Policy at issue did not provide for coverage based on the events occurring with respect to the wire, when the losses caused to WHP are clearly covered by multiple provisions of the Policy including but not limited to those identified in the foregoing paragraphs.

100.    Beazley's action and inaction described above, has proximately caused and continues to caused WHP to suffer damages in an amount of at least Three Hundred Twenty-Eight Thousand Five Hundred and No/100 Dollars ($328,500.00), but in an amount to be determined at trial.

101.    Beazley acted with malice, fraud, and in reckless or willful disregard of WHP's rights, and WHP is therefore entitled to punitive damages in an amount to be determined at trial.

**PRAYER FOR RELIEF**

**WHEREFORE**, WHP prays the Court enter judgment in WHP's favor as follows:

a. On the First Cause of Action, judgment against PNC in an amount not less than Three Hundred Twenty-Eight Thousand Five Hundred and No/100 Dollars ($328,500.00), to be determined at trial;

b. On the Second Cause of Action, judgment against PNC in an amount not less than Three Hundred Twenty-Eight Thousand Five Hundred and No/100 Dollars ($328,500.00), to be determined at trial;

c. On the Third Cause of Action, judgment against PNC in an amount not less than Three Hundred Twenty-Eight Thousand Five Hundred and No/100 Dollars ($328,500.00), to be determined at trial;

d. On the Fourth Cause of Action, judgment against PNC in an amount not less than Three Hundred Twenty-Eight Thousand Five Hundred and No/100 Dollars ($328,500.00), to be determined at trial;

e. On the Fifth Cause of Action, judgment against PNC in an amount not less than Three Hundred Twenty-Eight Thousand Five Hundred and No/100 Dollars ($328,500.00), to be determined at trial;

f. On the Sixth Cause of Action, a declaration that the Policy provides coverage for the losses sustained and suffered by WHP and further that Beazley has a legal obligation to compensate WHP for the losses;

g. On the Seventh Cause of Action, judgment against Beazley in an amount not less than Three Hundred Twenty-Eight Thousand Five Hundred and No/100 Dollars ($328,500.00), to be determined at trial;

h. On the Eighth Cause of Action, judgment against Beazley in an amount not less than Three Hundred Twenty-Eight Thousand Five Hundred and No/100 Dollars ($328,500.00), to be

19

determined at trial;

    i.        Awarding WHP pre- and post-judgment interest in an amount to be determined at trial;

    j.        Awarding WHP punitive damages in an amount to be determined at trial;

    k.        Awarding WHP attorney fees, costs, and expenses incurred in the prosecution of this action; and

    l.        Awarding WHP such other and further relief as the Court may deem equitable, just, and proper.

Dated: April 27, 2026                      Respectfully submitted,

                                          */s/ Jody M. Oster*

Jody M. Oster (0041391)
1391 W. Fifth Avenue
Suite 433
Columbus, Ohio  43212
Phone: (614) 560-6797
Email: jodymoster@gmail.com
**ATTORNEY FOR PLAINTIFF**
**WICKENS HERZER PANZA CO.**

20